## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| ROLANDO AMBRIZ, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>GLENN HEGAR, in his official capacity as Texas Comptroller of Public Accounts, )<br><br>Defendant. ) | CIVIL ACTION<br><br>No. <u>1:22- cv-1067</u> |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Rolando Ambriz ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint and Jury Demand (the "Complaint") against Defendant Glenn Hegar, Texas Comptroller of Public Accounts, in his official capacity (the "Comptroller" or "Defendant"), and states as follows:

## INTRODUCTION

1.     Plaintiff brings this action challenging the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 17 of the Texas Constitution of provisions of the Texas Unclaimed Property Law, (the "TUPL"). That statute requires the State of Texas ("Texas" or the "State"), acting through the Controller, to make public use of, without payment of just compensation to its owners, private property that the

1

State classifies as "presumed abandoned." This Complaint seeks declaratory and further necessary or proper relief, including an injunction, under 42 U.S.C. § 1983, 22 U.S.C. §§ 2201 & 2202, and the United States and Texas Constitutions on behalf of all current owners of Unclaimed Property held by the Comptroller in the form of money who will reclaim their property in the future.

2.      The TUPL applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Tex. Prop. Code Ann. §§ 72.001–.104 & 73.001–.003 (Vernon Supp. 2022). Under the TUPL, such property is "presumed abandoned" if the owner, as defined in the TUPL, has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within certain time limits provided in the TUPL. *Id.* § 74.301. Property that is "presumed abandoned" must be delivered to the Comptroller's custody.

3.      After it takes non-cash property, the Comptroller generally sells it to turn it into cash. Tex. Prop. Code Ann. § 74.401.

4.      The Takings Clause of the Fifth Amendment to the United States Constitution (the "Fifth Amendment") prohibits the government from using private property for public purposes without compensation to the property owner as follows: "nor shall private property be taken for public use, without just compensation." The Fifth Amendment is applied to the States by the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Fourteenth Amendment").

5.     The Takings Clause of Article 1, Section 17 of the Texas Constitution ("Article 1, Section 17") contains a similar proscription:

TAKING PROPERTY FOR PUBLIC USE; SPECIAL PRIVILEGES AND IMMUNITIES; CONTROL OF PRIVILEGES AND FRANCHISES.

(a)     No person's property shall be taken, damaged, or destroyed for or *applied to public use* without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

(1)     the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

(A)     the State, a political subdivision of the State, or the public at large; or

(B)     an entity granted the power of eminent domain under law; or

(2)     the elimination of urban blight on a particular parcel of property.

…. (emphasis added).

6.     Nevertheless, under the TUPL, "presumed abandoned" cash and cash proceeds from the sale of "presumed abandoned" non-cash property ("Unclaimed Property"), and any earnings on such property are all used to fund State programs or operations. Specifically, Unclaimed Property is deposited by the Comptroller to the credit of the general revenue fund of the State of Texas, as is "any income derived from investments of the unclaimed money." *Id.* § 74.601(b). While an owner who files a valid claim may reclaim property from the Comptroller, the TUPL provides that an owner may recover only the cash turned over to the Comptroller by the holder (or the cash proceeds from the sale of non-

cash property). *Id.* § 74.501. Put another way, the TUPL prohibits the Comptroller from paying any interest or just compensation reflecting the time value of an owner's property or other value from the State's public use of the owner's private property.

7.    Accordingly, the TUPL effectively provides the State with an interest-free loan of unclaimed private property funds that the TUPL directs the Comptroller to co-mingle with the State's general fund while in the Comptroller's custody, explicitly permitting the Comptroller to invest and use the Unclaimed Property alongside other State funds and mandating that any investment returns also accrue to the State's general revenue fund.

8.    The Comptroller currently holds more than $7 billion in Unclaimed Property funds, and he uses that Unclaimed Property freely to fund State obligations paid out of the general revenue fund and then returns Unclaimed Property to its owners making claims for the same by payments out of the general revenue fund. From the time he entered office in 2015 through 2022, Defendant Hegar has returned more than $2 billion in Unclaimed Property without payment of just compensation for the State's public use of that private property. Accordingly, Plaintiff and tens of thousands of Texas citizens who have and will claim their Unclaimed Property in the future will have their Constitutional rights violated when the Comptroller refuses to pay them just compensation for the public use of their property.

9.     The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017) considered the Illinois Unclaimed Property act, which, like Texas's, required the state to use Unclaimed Property without paying compensation to the property's owners. It held that act violated the Fifth Amendment's Takings Clause, made applicable to Illinois and the other states through the Due Process Clause of the Fourteenth Amendment, because it denied property owners just compensation for the benefit of their property's use while it was in state custody. The Seventh Circuit also held that the state's obligation to pay just compensation for the public use of unclaimed private property does not depend on whether the property was earning interest before it was delivered to the state.

10.     In this Complaint, Plaintiff seeks a declaration that the TUPL is unconstitutional because it requires the Comptroller to appropriate private Unclaimed Property for public purposes without any payment of  just compensation, which constitutes a  taking of Plaintiff's and the Class's property in violation of the Fifth Amendment and Article 1, Section 17. Those constitutional provisions provide a mandatory, self-executing remedy of just compensation for such appropriation by the State of private property for public use. Plaintiff additionally seeks further relief, including injunctive relief to require the Comptroller to pay just compensation to Unclaimed Property claimants, in accordance with the declaratory relief requested.

## PARTIES

11.     Plaintiff Rolando Ambriz is and has been at all relevant times a citizen and resident of Houston, Texas.  Plaintiff is an owner of property that is currently held in custody pursuant to the TUPL by the State.

12.     Defendant Glenn Hegar is the Texas Comptroller of Public Accounts. In that position, pursuant to the TUPL, Defendant is and has been in charge of supervising and administering the TUPL. Plaintiff sues Defendant Hegar in his official capacity. In his official capacity, Defendant resides in this District and is subject to suit in this District.

## JURISDICTION AND VENUE

13.     The claims in this Complaint arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

14.     Venue is proper in this District because Defendant is deemed to reside in and is subject to suit in this District, and because a substantial portion of the events that underlie the  claims asserted occurred in this District.

## STATEMENT OF FACTS

### A.     *The TUPL and Its Operation*

15.     The TUPL contains many provisions modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission.  The TUPL, as alleged above, provides that private property is "presumed abandoned"

if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time. Tex. Prop. Code Ann. §§ 72.001–.104 & 73.001–.103 (Vernon Supp. 2022). The purpose of the TUPL is twofold: first, to reunite owners with their property, and second, to allow the State, rather than the holder, to use the property before it is reunited with its owner without paying any compensation to the owner for the property's use.

16.    Once a holder determines property in its possession is "presumed abandoned" within the meaning of the TUPL, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to pay or deliver the property into the custody of the Comptroller. If the property is not cash, securities or negotiable instruments, the Comptroller "may" sell the property. *Id.* § 74.401. The Unclaimed Property and proceeds from the sale of Unclaimed Property are to be held in custody for the owner, who can reclaim the property from the Comptroller at any time, but without payment of any compensation for the State's use of that property during its time in the Comptroller's custody. *Id.* § 74.501.

17.    The TUPL directs the Comptroller to deposit all funds received pursuant to the TUPL, including funds from the liquidation of non-cash property, into the State's general fund. *Id.* § 74.601. While the TUPL does require the Comptroller to use Unclaimed Property to pay owner claims, *Id.* § 74.602, the TUPL, by requiring comingling of Unclaimed Property with the State's general

fund and permitting the investment of Unclaimed Property alongside State public funds, requires the public use of Unclaimed Property while in State custody. To be sure, the TUPL requires that all "income derived from investments of unclaimed money" be deposited into the general revenue fund. *Id.* § 74.601(b)(4).

18.    The Comptroller acknowledges that he holds over $7 billion of Unclaimed Property and that he has authorized payment of owner claims exceeding $2 billion since he entered the Comptroller's office in 2015. The Comptroller receives, as custodian under the TUPL, hundreds of millions of dollars in new Unclaimed Property every year.

19.    Thus, under the TUPL, $7 billion in Unclaimed Property currently resides in the State's general fund. There it earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments. By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the State's general fund.

20.    Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the TUPL is purely custodial in nature, and title to the presumed abandoned property is never transferred from the owner to the State. Thus, title and ownership always remain with the original owner of the property.

21.    The Comptroller does not compensate an owner of Unclaimed Property for the loss of the beneficial use of the property or its time value while

it is in State custody. So, the Comptroller does not pay just compensation to any owner for the State's use of their private property while it is in State custody. Based on Section 74.501, a Texas court held that if a claim for return of Unclaimed Property is determined in favor of the owner/claimant, the State may statutorily and constitutionally deliver or pay over to the claimant only the amount of money the Comptroller received or the proceeds he received from the sale of non-cash property without the payment of interest or other compensation for the public use of that private property. *Clark v. Strayhorn*, 184 S.W.3d 906, 913-914 (Tex. App.—Austin 2006, pet. denied).

22.    While the Austin Court of Appeals correctly held § 74.501 allows, indeed requires, the Comptroller not to pay just compensation for the public use of private property, it erred in holding this action by the Comptroller did not amount to an unconstitutional taking. Subsequently, as noted above, in *Kolton v. Frerichs*, the Seventh Circuit considered a Fifth Amendment challenge to Illinois' unclaimed property statute, which like the State's, paid no compensation to property owners for the state's use of Unclaimed Property while in state custody. It held:

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216,235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L.Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property

> earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be.

869 F.3d at 578-80.

23.    The essential features of the Illinois unclaimed property act are identical to the State's. The Illinois act allowed for no payment to property owners for the state's use of the owner's property while in the state's custody. Here, too, the TUPL does not allow for the payment of compensation to property owners for the State's use of unclaimed property for public purposes while the property is in the State's custody pursuant to the TUPL. Rather, State law requires that earnings on unclaimed property while in State custody inure to the sole benefit of the State's general revenue fund.

### B.    *Plaintiff's Property.*

24.    According to the Comptroller's online records, he holds Ambriz' s property in custody. He describes that property as a "savings account,"[1] and it is in the amount of $25.00.

25.    While the Comptroller has held Plaintiff's property in custody, pursuant to the TUPL, the State has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the State's operations and programs.

---

[1] The holder was USAA Federal Savings Bank.

26.    Under the TUPL, when Plaintiff claims his property, as he intends to do as soon as he has obtained a final ruling from this litigation, the Comptroller will (absent a favorable ruling from this action) pay Plaintiff a cash payment equal to the amount of Plaintiff's Unclaimed Property ($25.00) the Comptroller received, but he will not pay him just (or any) compensation for the State's use of that property during the period of time he had custody of the property.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(a) and Rule 23(b)(1)(A) & (b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and prospective injunctive relief on behalf of the following class (the "Class"):

> All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of Unclaimed Property being held in custody by the Texas Comptroller of Public Accounts of the State of Texas in the form of money under the Texas Unclaimed Property Law, as of the date of the complaint or who become owners of Unclaimed Property so held during the pendency of this litigation, and who will in the future reclaim their property from the Comptroller.

28.    The members of the Class are so numerous that joinder of all members is impracticable. Currently the Comptroller holds more than $7 billion in Unclaimed Property in custody, with hundreds of millions of dollars of additional Unclaimed Property flowing to him annually. Given that most of the property amounts held are small, the number of persons or entities who own property presumed abandoned and held in custody by the Comptroller under the TUPL necessarily must be in the hundreds of thousands. Indeed, given that the State

paid out more than $2 billion in Unclaimed Property claims since 2015, it is reasonable to expect hundreds of thousands of people to make claims for the return of their property in the next year alone.

29.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff's property, like that of the other Class members, is currently being held in custody under the TUPL by the Comptroller. Like all the other members of the Class, absent relief from this Court, when Plaintiff claims his property from the Comptroller, he will not receive just (or any) compensation for its use by the State. Therefore, Plaintiff suffers from the same deprivation of his Constitutional rights as each Class member he seeks to represent, and he seeks to recover for that deprivation under the same legal theories as the rest of the Class.

30.    Plaintiff will fairly and adequately protect the interests of the Class because he has no conflicts of interest with the other members of the Class, he is ready, willing, and able to fulfill his responsibilities as a class representative, and he has retained counsel competent and experienced in class action litigation to represent him and the Class.

31.    There are questions of law and fact common to the Class, including, but not limited to, the following:

a.    Whether, under the Comptroller's direction, the State's use of Class members' property for public purposes to fund its operations, and to earn and retain interest, dividends and other earnings or accruals on that

property, constitutes a taking for which just compensation is due under the United States and Texas Constitutions;

b.    whether the Comptroller will refuse to pay just compensation to Class members in the future when they reclaim their property; and

c.    the appropriate measure of just compensation the Court should declare that the Comptroller must pay to Plaintiff and the Class for the public use of their property when they claim their Unclaimed Property.

32.    The Defendant has acted and refused to act, and will continue to do so in the future, on grounds that apply generally to the Class such that declaratory relief is appropriate to the Class as a whole, making certification pursuant to Rule23(b)(2) appropriate.

33.    The State and Defendant must treat all Texas citizens equally in its handling of their Unclaimed Property. Accordingly, certification pursuant to Rule 23(b)(1)(A) is also appropriate, given that the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that could establish incompatible standards of conduct for the State.

**COUNT I**
**DECLARATORY AND INJUNCTIVE RELIEF ON BEHALF**
**OF PLAINTIFF AND THE CLASS PURSUANT TO 28 USC §§**
**1983 AND 2201 BASED ON UNCONSTITUTIONALITY**
**UNDER THE FIFTH AMENDMENT**

34.    Plaintiff realleges paragraphs 1 through 33 as though fully set forth herein.

35.     Section 717.124(4)(a) of the TUPL violates the Fifth Amendment as applied to the State by the Fourteenth Amendment because it requires the Comptroller to refuse to pay property owners  for the public use by the State of their Unclaimed Property when they reclaim that property. Accordingly, an actual controversy exists between Plaintiff and Class members and the Comptroller as to whether he  must, pursuant to the Constitution, pay them, when they reclaim their property, just compensation for the public use of their property while it is in his custody.

36.     The Comptroller, under color of the TUPL, has violated and will continue in the future to violate the Fifth Amendment and 42 U.S.C. § 1983 by subjecting Plaintiff and Class members to the deprivation of their rights under the Fifth and Fourteenth Amendments to just compensation for the use of their property for public purposes.

37.     Plaintiff and the Class are, accordingly, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, entitled to a declaration that Section 717.124(4)(a) of the TUPL prohibiting the payment of the time value of their property or any other just compensation for its use to Plaintiff and the Class violates the Fifth Amendment and Section 1983 and, thus, that the Comptroller must pay them just compensation for the use of their property while it was in his custody. The just compensation the Court declares the Comptroller must pay when he returns Unclaimed Property could be the time value of the money measured by, for example, the average rate earned by funds in the general fund during the time the property was in the State's custody or the

average rate at which the State borrowed money during the time the property was in the State's custody or the rate then payable as prejudgment interest as set by the Comptroller pursuant to Texas law or such other rate the Court finds appropriate.

38.     Pursuant to Fed. R. Civ. P. 57, Plaintiff and the Class request the Court to order a speedy hearing on their request for a declaratory judgment following class certification. As to any issue not decided by the Court as a matter of law and so triable, Plaintiff and the Class request a jury trial.

39.     In addition to declaratory relief pursuant to 28 U.S. § 2202, Plaintiff and the Class also seek such further necessary or proper relief against the Comptroller as the Court finds appropriate, including, but not limited to, an injunction requiring him to pay just compensation to Plaintiff and Class members who reclaim their property in the future, in accordance with the declaratory relief sought.

**COUNT II**
**DECLARATORY AND INJUNCTIVE RELIEF ON BEHALF OF PLAINTIFF AND THE CLASS PURSUANT TO TEXAS CONSTITUTION ARTICLE 1, SECTION 17 AND 28 U.S.C §§ 2201 & 2202 BASED ON UNCONSTITUTIONALITY UNDER ARTICLE X, SECTION 6(a)**

40.     Plaintiff realleges paragraphs 1 through 39 as though fully set forth herein.

41.     Section 717.124(4)(a) of the TUPL violates Article 1, Section 17 because it requires the Comptroller to refuse to pay just compensation to property owners for the public use by the State of their Unclaimed Property when they reclaim that property. Accordingly, an actual controversy exists between Plaintiff and Class

members and the Comptroller as to whether he must, pursuant to the Texas Constitution, pay them, when they reclaim their property, just compensation for the public use of their property while it was in his custody.

42.    Plaintiff and the Class are, accordingly, pursuant to Article 1, Section 17 and 28 U.S.C. § 2201, entitled to a declaration that the TUPL prohibiting the payment of just compensation for the public use of their property to Plaintiff and the Class violates Article 1, Section 17 and, thus, that the State must pay them such just compensation. The just compensation the Court declares the Comptroller must pay when he returns Unclaimed Property could be the time value of the money measured by the average rate earned by funds in the general fund during the time the property was in the Comptroller's custody or the average rate at which the State borrowed money during the time the property was in the Comptroller's custody or the rate then payable as prejudgment interest as set by the Comptroller pursuant to Texas law, or such other measure of just compensation the Court finds appropriate.

43.    Pursuant to Fed. R. Civ. P. 57, Plaintiff and the Class request the Court to order a speedy hearing on their request for a declaratory judgment following class certification. As to any issue not decided by the Court as a matter of law and so triable, Plaintiff and the Class request a jury trial.

44.    In addition to declaratory relief pursuant to 28 U.S. § 2202, Plaintiff and the Class also seek such further necessary or proper relief against the Comptroller as the Court finds appropriate, including, but not limited to, an injunction requiring him to pay just compensation to Plaintiff and Class members

who reclaim their property in the future, in accordance with the declaratory relief sought.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Rolando Ambriz and the Class respectfully request the Court to award the following relief against the Comptroller as follows:

A.    An order certifying this action to proceed as a class action pursuant to Rule 23(a) and 23(b)(1)(A) and/or 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above, appointing Plaintiff as Class representative, and appointing his counsel as Class Counsel.

B.    A judgment declaring that the TUPL's prohibition of the payment of just compensation to Plaintiff and the Class for the public use of their property violates the Fifth Amendment as applied to the State by the 14th Amendment and Section 1983 and, thus, that when they reclaim their property, the Comptroller must pay them just compensation for the public use of their property while it was in his custody.

C.    A judgment declaring that the TUPL's prohibition of the payment of just compensation to Plaintiff and the Class for the public use of their property violates Article 1, Section 17 of the Texas Constitution  and, thus, that when they reclaim their property, the Comptroller must pay them just compensation for the public use of their property while it was in his custody.

D.    A judgment declaring the measure of just compensation that the Comptroller must pay to Plaintiff and the Class.

E.     A judgment enjoining the Comptroller to pay just compensation pursuant to the declared measure thereof on future claims of Unclaimed Property.

F.     A judgment awarding Plaintiff his attorneys' fees and reimbursement of their expenses pursuant to 42 U.S.C. § 1988 and/or applicable principles of equity; and

G.     A judgment awarding Plaintiff and the Class such other and further relief to which they justly be entitled.

DATED: October 19, 2022.

Respectfully,

/s/ *Roger L. Mandel*
**JEEVES MANDEL LAW GROUP, P.C.**
Texas Bar No. 12891750
Roger L. Mandel
2833 Crockett St
Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

**LINK & ASSOCIATES**
Felipe B. Link
State Bar No. 24057968
10440 North Central Expy., Ste. 950
Dallas, Texas 75231
Telephone: (214) 214-3001
flink@linklawpc.com

**JEEVES LAW GROUP, P.A.**
Scott R. Jeeves, Esq,*
Kyle W. Woodford, Esq.*
2132 Central Avenue
St. Petersburg, Florida 33712
Telephone: (727) 894-2929
sjeeves@jeeveslawgroup.com

kwoodford@jeeveslawgroup.com
khill@jeeveslawgroup.com

**CRAIG E. ROTHBURD, P.A.**
Craig E. Rothburd, Esq*
320 W. Kennedy Blvd., #700
Tampa, Florida 33606
Telephone: (813) 251-8800
Fax: (813) 251-5042
craig@rothburdpa.com
maria@rothburdpa.com

**SMITH, KATZENSTEIN & JENKINS, LLP**
Michael C. Wagner, Esq*
Julie M. O'Dell, Esq*
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
mcw@skjlaw.com
jmo@skjlaw.com

**THE LAW OFFICE OF ARTHUR SUSMAN**
Arthur Susman, Esq*
1540 N. Lake Shore Drive
Chicago, Illinois 60610
(847) 800-2351
arthur@susman-law.com

*Pro Hac Vice* Forthcoming

*Attorneys for Plaintiff and the Class*