**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROLANDO AMBRIZ,** | § | |
| **Plaintiff,** | § | |
| **V.** | § | |
| | § | |
| **GLENN HEGAR, in his official capacity,** | § | **A-22-CV-1067-DII** |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court is Defendant's Motion to Dismiss (Dkt. #21),[1] Plaintiff's Motion for Leave to File Notice of Supplemental Authority (Dkt. #30), and all related briefing. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned submits this Report and Recommendation to the District Judge.

**I.    BACKGROUND**

Plaintiff Rolando Ambriz, individually and on behalf of those similarly situated, brings suit to challenge the Texas Unclaimed Property Act ("TUPA"), codified at Texas Property Code §§ 72.101 *et seq*. Dkt. #1 (Compl.). TUPA provides that personal property held by a third party, such as a bank or insurance company, that is presumed abandoned, must be delivered to the Comptroller. TEX. PROP. CODE §§ 72.001–.104 & 73.001–.003, 74.301. If the property is not cash, the Comptroller generally sells the property to convert it to cash. *Id*. § 74.401. The Comptroller deposits the money into the State's general revenue fund. *Id*. § 74.601(b). An owner may file a

---

[1] The motion was referred by then-presiding United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. #26.

claim to reclaim the property from the Comptroller, but only recovers the amount that was abandoned. *Id*. § 74.501. The owner may not recover any interest. *Id*.

Ambriz asserts the failure to pay interest is a "taking" under both the federal constitution and the Texas constitution. He asserts claims for declaratory and injunctive relief under the federal constitution and the Texas constitution. Compl. ¶¶ 34-44. Additionally, he seeks any further relief against the Comptroller that the court may find appropriate, including "an injunction requiring him to pay just compensation to Plaintiff and Class members who reclaim their property in the future, in accordance with the declaratory relief sought." *Id*. ¶¶ 39, 44.

The Comptroller moves to dismiss, arguing: 1) Ambriz's claims are barred by the Eleventh Amendment, 2) Ambriz lacks standing, and 3) Ambriz fails to state a claim for which relief can be given.

## II.  APPLICABLE LAW

Federal Rule of Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The objection that a federal court lacks subject-matter jurisdiction, *see* FED. R. CIV. P. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. FED. R. CIV. P. 12(h)(3). While the burden of proof falls on the plaintiff to show that jurisdiction does exist, "[u]ltimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his

claim that would entitle [the] plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A district court may base its determination on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010) (citations and quotations omitted).

If the court does not have jurisdiction, it may not consider further claims in the case. So, when "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits" such as a Rule 12(b)(6) motion. *Willoughby v. United States*, 730 F.3d 476, 479 (5th Cir. 2013) (quoting *Ramming*, 281 F.3d at 161).

## III.   ANALYSIS

The court will first address whether Ambriz's claims are barred by the Eleventh Amendment. The court will then consider whether Ambriz has standing to assert any claims that survive Eleventh Amendment immunity. Finally, the court will consider whether Ambriz has sufficiently pleaded any claims that survive the two threshold inquiries.

### A.   Eleventh Amendment Immunity

The Comptroller argues Ambriz's claims are barred by the Eleventh Amendment. State sovereign immunity divests federal courts of jurisdiction over states and their agencies and instrumentalities, unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. *See* U.S. Const. amend. XI; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974) (extending sovereign

immunity to state officers in their official capacities)); *Anderton v. Texas Parks & Wildlife Dep't*, 605 F. App'x 339, 348–49 (5th Cir. 2015) (holding sovereign immunity extends to state officials "if the State is the real party in interest") (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013)).

The *Ex Parte Young* exception to Eleventh Amendment sovereign immunity is a legal fiction that allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997 (quoting *Raj*, 714 F.3d at 328); *see Ex Parte Young*, 209 U.S. 123 (1908). For the exception to apply, the state official, "by virtue of his office," must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* (quoting *Young*, 209 U.S. at 157). Additionally, the suit must be for prospective relief. *Id.* at 998.

### 1. State Claims

Eleventh Amendment immunity bars this court from considering Ambriz's claims based on the Texas constitution. Ambriz sues Comptroller Hegar in his official capacity. Texas, not the Comptroller, is the real party in interest. As the *Ex Parte Young* exception only applies to federal claims, Ambriz's state-law claims are barred in federal court by the Eleventh Amendment.

### 2. Federal Claims

The Comptroller argues Ambriz's federal claims do not fall within the *Ex Parte Young* exception because Ambriz is primarily seeking monetary damages. The Comptroller relies, in part, on *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 695 (W.D. Tex. 2006) (Sparks, J.), aff'd sub nom. *Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007), cert. denied 553 U.S. 1005 (2008). Arnett asserted similar claims that interest was owed when the state of Texas returned abandoned property. *Id*.

The court held the claims were barred under Eleventh Amendment immunity because Arnett sought money from the state treasury. *Id.* at 695-96. The *Arnett* court also distinguished a similar case against the California Controller that held the Controller was not entitled to Eleventh Amendment immunity because in that case the money was held in a trust, rather than the state treasury. *Id*. at 696.

Ambriz disagrees and argues the prospective monetary relief he seeks does not remove this case from the *Young* exception. He distinguishes *Arnett* by arguing that case only sought retrospective monetary damages because there the previously-abandoned property had already been returned to Arnett. In contrast, Ambriz argues he seeks interest when his property is returned in the future. He argues this type of future, supplemental monetary relief is allowed under *Young*. *See Edelman v. Jordan*, 415 U.S. 651 (1974). He also cites cases from other jurisdictions allowing similar claims for interest under a state's unclaimed property laws to go forward under the *Young* exception. *See Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017); *Siebers v. Barca*, 2022 WL 2438605 (W.D. Wis. Jul. 5, 2022).

In *Edelman*, plaintiffs alleged Illinois officials were administering federal-state programs in a manner inconsistent with federal regulations and the Fourteenth Amendment. 415 U.S. at 653. Plaintiffs sought declaratory and injunctive relief, and specifically requested a permanent injunction that required the state officials to award plaintiffs benefits wrongly withheld. *Id.* at 656. The Supreme Court held Eleventh Amendment immunity only barred plaintiffs' claims for past benefits. *Id*. at 659-71. The Court acknowledged that suits allowed under *Young* may have financial consequences for states but distinguished that from compensation for plaintiffs. *See id.* at 668.

Similar to the substance of Ambriz's claim, *Kolton* relied on *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), which held Indiana's similar refusal to pay interest upon the return of

presumed-abandoned property was a taking.  However, neither *Cerajeski* nor its trial court's order addressed Eleventh Amendment immunity. Ultimately, *Kolton* held, "Plaintiffs are entitled to prospective relief under *Ex parte Young*. But they cannot parlay success under *Ex parte Young* into a money judgment in federal court because that case rests on the proposition that an officer acts independently when enforcing an unconstitutional law." *Kolton*, 869 F.3d at 536.

Consistent with *Edleman* and *Siebers v. Barco*, 2022 WL 2438605 (W.D. Wisc. July 4, 2022), the undersigned finds Ambriz's claims for prospective declaratory or injunctive relief that Texas must pay interest on the unclaimed property it holds fall within the *Ex parte Young* exception, even if those claims will ultimately result in payments by the State. However, to the extent Ambriz seeks specific damages or a declaration that he or class members are owed specific damages under the statute, that claim does not fall under the *Young* exception. *See Edelman*, 415 U.S. at 664 (approving of district court's injunction requiring state to comply with federal time limits for processing and paying federal-state benefits but disapproving of retroactive award of benefits). This is not inconsistent with the *Arnett* case previously before the court. *See* 515 F. Supp. 2d at 690. Arnett had already received the unclaimed property from the State and thus his claim for monetary relief was retrospective and barred by the Eleventh Amendment. *Id*.

Accordingly, the court next turns to the issue of whether Ambriz has standing to pursue his claim for declaratory and injunctive relief regarding the constitutionality of the Texas statute.

### B.    Standing

"The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo*, 578 U.S. at 338 (citing cases). An injury in fact is an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The standing question "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Id*. at 544-45 (quoting *Warth*, 422 U.S. at 499 n. 10). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Id*. (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)). Ripeness often overlaps with standing, "most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical." *Id*. (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2nd Cir. 2006)).

"[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008).

> A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583 586-87 (5th Cir. 1987) (citations omitted). For these reasons, a declaratory judgment cannot be based on a possible future factual situation that may never develop. *Id*. at 587-88; *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation and internal quotation marks omitted).

In contrast, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 469 (5th Cir. 2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up)). "An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC*, 568 U.S. at 90–91 (cleaned up).  The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Meadows v. Odom*, 198 F. App'x 348, 351 (5th Cir. 2006) (quoting *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004)).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC*, 568 U.S. at 91. A case is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Green Valley Special Util. Dist.*, 969 F.3d at 469 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotation marks and alteration omitted)); *Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urb. Dev.*, 618 F. App'x 781, 788 (5th Cir. 2015) (case is moot when "effective relief is not available").

The Comptroller argues Ambriz has not suffered an injury in fact, any injury is not traceable to the Comptroller, and the relief Ambriz seeks will not redress his alleged injury.

1.     Injury in Fact

The Comptroller argues Ambriz has not suffered an injury in fact because he has not submitted a claim for his property, i.e., his claim is not yet ripe. Citing cases, the Comptroller argues that, because Ambriz has not filed a claim, his alleged harm is not certainly impending; it is merely an allegation of possible future injury. Ambriz argues that as soon as the State took his

property without paying him, his takings claim arose. Ambriz also argues that under *Pakdel v. City & Cty. of San Francisco, Ca.*, 141 S. Ct. 2226 (2021), exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position. The Comptroller counters that, because Ambriz has not filed a claim for the property, he has not reached a "conclusive position" on Ambriz's property claim as "necessary to satisfy the finality (ripeness) requirement for takings claims." *See Pakdel*, 141 S. Ct. at 2231.

In *Pakdel*, the Supreme Court applied the longstanding rule that "[w]hen a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision. *Pakdel*, 141 S. Ct. at 2228 (citing *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 737 (1997)). The Ninth Circuit ruled the Pakdels' takings claim was unripe because they never obtained a final decision regarding their real estate application even though the city had denied their requests for an exemption twice and the relevant agency could no longer grant relief. *Id.* at 2229. The Supreme Court reversed, holding "[t]he finality requirement is relatively modest. All a plaintiff must show is that there is no question . . . about how the regulations at issue apply to the particular land in question." *Id.* at 2230 (cleaned up).

The Comptroller argues that he has not taken a final position on Ambriz's abandoned property claim because he might determine that Ambriz has not proved the property is in fact his. However, Ambriz pleaded that according to the Comptroller's online records, the Comptroller holds Ambriz's property, money from a USAA Federal Savings Bank savings account. Compl. at ¶ 24. Additionally, citing Texas Property Code § 74.304(d), the Comptroller concedes he "has no authority to pay interest on unclaimed property claims." Dkt. #21 at 3. Thus, whether Ambriz can collect interest under the statute on the property held by the State is finally determined.

Further, it is not lost on the court that if Ambriz were to file suit after filing a claim and being denied interest, his claim would be dismissed under Eleventh Amendment immunity and he would have no standing to pursue a claim for prospective injunctive relief. *See Arnett v. Combs*, 509 F.3d 1134 (2007); *Arnett v. Strayhorn*, 515 F. Supp. 2d 699 (W.D. Tex. 2006); *Arnett v. Strayhorn*, 515 F. Supp. 2d 690 (W.D. Tex. 2006).

Accordingly, the undersigned finds that Ambriz has sufficiently alleged an injury in fact.

### 2.    <u>Traceability</u>

Next, the Comptroller argues Ambriz's injury is not traceable to the Comptroller because "if Plaintiff had not forgotten about his $25 deposited with USAA, he would have had the benefit of its use. Plaintiff's asserted 'injury' is solely the result of his own making and neglect." Dkt. #21 at 13. The court disagrees. The alleged injury is the *State's* use of Ambriz's property without compensation. That injury only occurs when the State takes possession of Ambriz's property. Accordingly, the undersigned finds Ambriz's alleged injury is sufficiently traceable to the Comptroller.

### 3.    <u>Redressability</u>

Finally, the Comptroller argues Ambriz's injury cannot be redressed by this suit, but those arguments merely reassert the Comptroller's arguments that Ambriz has not suffered an injury traceable to the Comptroller. The court rejects this argument for the same reasons.

Accordingly, Ambriz has standing to assert a claim for declaratory and injunctive relief that TUPA's statutory scheme constitutes a taking without just compensation.

### C.    **Sufficiency of Pleaded Claim**

The Comptroller next argues that Ambriz has failed to state a claim for which relief can be granted under Rule 12(b)(6). When evaluating a motion to dismiss for failure to state a claim under

Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Comptroller argues Ambriz has failed to state a claim because (1) there is no "taking" of abandoned property and (2) public use of unclaimed property is not a taking for which just compensation is owed. The Comptroller relies on *Clark v. Strayhorn*, 184 S.W.3d 906, 909-910 (Tex. App.—Austin 2006, pet. denied), cert. denied, 127 S. Ct. 508 (2006) (holding there was no takings claim for non-payment of interest), and *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), on which *Clark* relied. Ambriz argues *Clark*, and other cases like it from other states, misunderstood *Texaco*.  Ambriz urges the court to adopt the rationale of *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013), which held the failure to compensate with interest for the time the property was in the state's possession was a taking without compensation. After briefing was completed, Ambriz filed a motion for leave to file a notice of supplemental authority to inform the court of *Tyler v. Hennepin Cnty., Minnesota*, 143 S. Ct. 1369, 1374 (May 25, 2023).  Ambriz contends *Tyler* provides new and compelling support for his arguments.

*Clark* held the constitution does not require the payment of interest to owners of unclaimed property. *Clark*, 184 S.W.3d at 908. In *Combs v. B.A.R.D. Industries Inc.*, the Austin Court of Appeals reaffirmed that "there is no unconstitutional taking of interest on property that is presumed abandoned." 299 S.W.3d 463, 472 (Tex. App.—Austin 2009) (citing *Clark*). The Fifth Circuit has also cited Clark with approval. In *In re Lease Oil Antitrust Litigation*, the Fifth Circuit reviewed a district court's denial of Texas's motion to intervene in a class settlement. 570 F.3d 244 (5th Cir. 2009). Texas contended it had an interest in the settlement because a number of class members had become unreachable during the litigation, but their last-known address was in Texas. Texas claimed those settlement shares were unclaimed property and it had an interest in the investment income that could be earned on the property until it is claimed. *Id*. at 250. The Fifth Circuit allowed Texas to intervene, holding that Texas did have an interest in the litigation and "Texas law assigns

the interest accrued from unclaimed property to the state." *Id.* at 251. The Fifth Circuit also noted that "[t[he state is not required to pay interest earned from the property to the original owners." *Id.* at 250 (citing *Clark*). Given the Fifth Circuit's approval of *Clark*, the undersigned does not find that *Clark* was ill-reasoned.

Nor does the undersigned find that the Supreme Court's recent *Tyler* decision undermines *Clark's* analysis. *See Tyler*, 134 S. Ct. at 1369.  The Court in *Tyler* reversed the lower court's decision to dismiss the plaintiff's takings claim. The plaintiff had failed to pay her property taxes; the county seized the property, sold it for more than the plaintiff's debt to the county, and kept the remainder of the proceeds for its own use. *Id.* at 1374. The plaintiff asserted a takings claim that the county had unconstitutionally retained the excess value of her home above her tax debt. *Id.* The District Court dismissed the suit for failure to state a claim, and the Eight Circuit affirmed. *Id.* The Supreme Court reversed. Relying *Texaco*, on which *Clark* relied, the county argued the plaintiff had constructively abandoned the property by failing to pay taxes on it. *Id.* at 1379-80. The Court distinguished *Texaco* from the statute at issue in *Tyler* because in *Texaco* the owner had made no use of the property for some time, whereas the statute in *Tyler* gave no weight to the plaintiff's use of the property. *Id.* at 1380.

Ambriz relies on the Court's admonition that a state cannot sidestep the takings clause by disavowing traditional property interests in assets it wishes to appropriate. Dkt. #30 at 2 (citing *Tyler*, 143 S. Ct. at 1375). *Tyler* held "traditional property law principles, plus historical practice, and th[e] Court's precedents" should be considered along with state law to determine property rights. *Tyler*, 143 S. Ct. at 1375. Ambriz argues *Tyler* provides new support for his argument that "the circumstances under which the State takes unclaimed property do not constitute abandonment of the property under any reasonable or historically based understanding of the concept." *Id.* The

undersigned is not persuaded.  The statute in *Tyler* is entirely dissimilar to TUPA, and the *Tyler* Court did not disavow *Texaco*.

Accordingly, Ambriz's assertion that the State's retention of any interest on his unclaimed property fails to state a takings clause claim.  The undersigned will recommend the Comptroller's motion be granted on the ground that Ambriz has failed to state a claim for which relief can be granted.

## IV.   ORDER AND RECOMMENDATION

The court **GRANTS** Plaintiff's Motion for Leave to File Notice of Supplemental Authority (Dkt. #30).

For the reasons given above, the undersigned **RECOMMENDS** the District Court **GRANT in part and DENY in part** Defendant's Motion to Dismiss (Dkt. #21) under Rule 12(b)(6). Specifically, the undersigned recommends the District Court **GRANT** the motion and **DISMISS without prejudice** all of Ambriz's state law claims and any federal claim seeking retrospective relief or damages, **DENY** the motion to the extent it challenges subject matter jurisdiction as to Ambriz's prospective declaratory and injunctive claims, and **GRANT** the motion to the extent that seeks dismissal of Ambriz's prospective declaratory and injunctive claims under Rule 12(b)(6) and **DISMISS** those claims **with prejudice**.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED June 20, 2023,

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE